UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LOUISIANA CALDWELL,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW MEEK, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, DOE DEFENDANTS 1-10,<br><br>Defendants. | Case No. 3:26-cv-4705 |

# COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Louis Caldwell, who brings this suit as a result of the May 10, 2025, assault at the Excalibur Family Fun Center.

## INTRODUCTION

1. On May 10, 2025, Louis Caldwell and his family threw a joint birthday party for him and his young daughter at the Excalibur Family Fun Center in West Monroe, Louisiana.

2. While there, Mr. Caldwell was physically beaten by Defendant Matthew Meeks, without cause or warning, over several minutes.

3. Mr. Caldwell did not receive assistance from family, staff, or bystanders because Defendant Meeks repeatedly identified himself as a Louisiana State Police trooper, ordering everyone to not to intervene.

4. Mr. Caldwell suffered traumatic brain injury, broken bones, a vertebrae fracture, lumbar damage, and other injuries requiring surgery, as well as significant emotional distress and monetary damages.

5. Accordingly, Mr. Caldwell now brings this lawsuit.

## PARTIES

### *Plaintiff*

6. Plaintiff Louis Caldwell is a person of the full age of majority who is domiciled in Most & Parish, Louisiana. He brings this lawsuit to enforce his rights related to the assault.

### *Defendants*

7. Defendant Matthew Meek is a person of the full age of majority who is domiciled in the State of Louisiana. At all times relevant to this Complaint, he was employed by the Louisiana State Police.

8. Defendant Louisiana Department of Public Safety and Corrections is a juridical entity which oversees and operates the Louisiana State Police. The Louisiana Department of Public Safety and Corrections has twenty or more employees for each working day in each of twenty or more calendar weeks in any given year.

9. Doe Defendants 1-10 are individuals or entities not currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.

## VENUE AND JURISDICTION

10. Venue is proper pursuant to 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in the Western District of Louisiana and the events at issue in this lawsuit

occurred in the Western District of Louisiana. At least some parties, if not all, are domiciled in the Western District of Louisiana.

11. This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. This court has supplemental jurisdiction over Plaintiff's claims arising from state law in accordance with 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

12. Plaintiff Louis Caldwell and his young daughter share the same birthday.

13. In May 2025, Mr. Caldwell finished a painting job and collected a check. He decided to use that check to book a room in the Excalibur Family Fun Center (hereinafter "Excalibur") for May 10 so that he, his family, and friends could celebrate the joint birthday.

14. This included a $50.00 deposit.

15. Excalibur features activities for both adults, which are generally located outdoors, and children, which are indoors.

16. On the day of the party, Excalibur allowed Mr. Caldwell and his family to arrive 30 minutes before the establishment opened to set up the party room with decorations, games, and cake.

17. Mr. Caldwell and his family made matching pink t-shirts to commemorate the occasion, which also served as a clear visual cue of who belonged in their party.

18. Mr. Caldwell and his family arrived to Excalibur at approximately 5:50 p.m.

19. While the room was being set up, Mr. Caldwell checked in with the desk to receive a tray of coins, game passes, and other benefits of renting the room.

20. Mr. Caldwell, however, had to help a friend grab something from his vehicle so asked an employee to keep the tray on the counter. The employee agreed.

***Matthew Meek assaults and batters Mr. Caldwell***

21. Mr. Caldwell returned a few minutes later and a man from another party was standing between him and the tray.

22. Mr. Caldwell did not recognize the man at the time, but now knows that he is Defendant Matthew Meek.

23. Mr. Caldwell said "excuse me" to Defendant Meek three times in an effort to get to his tray.

24. Defendant Meek did not acknowledge Mr. Caldwell.

25. Defendant Meek reeked of alcohol.

26. Eventually, Mr. Caldwell reached past Defendant Meek to where his tray was placed and grabbed it.

27. Without warning, Defendant Meek hit Mr. Caldwell's arm in a karate chop motion, causing pain.

28. Defendant Meek then turned around and grabbed Mr. Caldwell by the throat, pulling him off of the ground and pushing him away from the counter.

29. Simultaneously, Defendant Meek started yelling that he was a state police trooper and instructed bystanders not to intervene.

30. Several bystanders begged Defendant Meek to stop.

31. Mr. Caldwell was intensely afraid for his personal safety and in significant pain. He told Defendant Meek that he would pay for both birthday parties if he put him down.

32. Defendant Meek continued to yell that he was a state police trooper.

33. Then, while still holding him by the throat, Defendant Meek punched Mr. Caldwell several times.

34. At some point, Defendant Meek either tripped or pushed Mr. Caldwell onto the ground.

35. Defendant Meek then sat on top of Mr. Caldwell and continued to beat him.

36. Defendant Meek ordered witnesses not to intervene because he was a state trooper.

37. Defendant Meek's wife then came over and kicked Mr. Caldwell several times with a metal-tipped boot.

38. The beating continued for several minutes.

39. Mr. Caldwell never struck Defendant Meek, except in attempting to get away.

40. Mr. Caldwell believed he was going to die at the hands of Defendant Meek.

41. Defendant Meek continued holding onto Mr. Caldwell and punching him while pushing him through a set of double-doors into the foyer area where he continued to beat him.

42. Mr. Caldwell could not breathe and eventually blacked out.

43. Defendant Meek stopped pummeling Mr. Caldwell at some point after he blacked out and lost consciousness.

44. While in the foyer, an Excalibur employee and a bystander finally intervened and assisted Mr. Caldwell through a second set of double-doors outside the building.

45. Defendant Meek did not provide any medical aid or other assistance to Mr. Caldwell.

***Aftermath and Investigation***

46. After Mr. Caldwell regained consciousness, he and his fiancé had been locked outside of the building with their kids and the rest of the partygoers insider with Defendant Meek and the Meek party. This caused Mr. Caldwell a great deal of stress for the safety of his children and others under his care.

47. Mr. Caldwell asked his brother to take him to the hospital. When they were leaving the parking lot, an ambulance arrived so Mr. Caldwell stayed to receive immediate medical attention.

48. At some point, Mr. Caldwell's entire family was removed from inside of Excalibur.

49. Upon information and belief, the room that Mr. Caldwell and his family had set up for the party was given to Defendant Meek.

50. Mr. Caldwell asked police to administer a breathalyzer test on Defendant Meek due to the strong alcohol smell, but they refused.

51. Mr. Caldwell requested, but never received, a refund or a discount.

52. Mr. Caldwell was eventually transported to the St. Francis Medical Center Emergency Room where he received additional medical treatment.

53. Defendant Meek caused Mr. Caldwell to suffer severe physical damage, including traumatic brain injury, a facial contusion, a compression fracture to his T12 vertebrae, a lumbar strain, and neck pain. Mr. Caldwell continues to rehab to this day and will require surgery.

54. The Ouachita Parish Sheriff's Office investigated the incident and ultimately issued Defendant Meek a misdemeanor summons for violating La. R.S. 14:35, Simple Battery.

55. The Louisiana State Police also investigated the incident and determined that Defendant Meek violated LSP P.O. 901 Code of Conduct and Ethics, section 4 – Conduct Unbecoming of an Officer and section 3 – Conformance to Laws.

56. The LSP investigation also found that:

a. Defendant Meek initiated physical violence;

b. Defendant Meek repeatedly identified himself as a law enforcement officer;

c. Defendant Meek's statements to investigators were contradicted by video surveillance and witness statements;

d. Defendant Meek's actions brought discredit on himself as a law enforcement officer; and

e. Mr. Calwell's reported injuries were consistent with witness statements.

57. The investigation, which included a review of video surveillance, corroborated much of Mr. Caldwell's story, including that Defendant Meek instigated the physical confrontation.

58. The investigation included witness statements which also corroborate Mr. Caldwell's account and injuries.

59. One witness confirmed that Defendant Meek held Mr. Caldwell by his neck, "threw him to the ground, jumped on top of him, and punched him in the face two to three times."

60. Another witness stated that Defendant Meek "threw Mr. Calwell to the ground, jumped on him, and began punching him."

61. Another witness stated that Defendant Meek "instantly grabbed Mr. Caldwell by his throat near his collar area and punched him in the mouth" and that he saw Defendant Meek

"jump on top of Mr. Caldwell while he was on the ground and [Defendant Meek was] choking Mr. Caldwell."

62. Defendant Meek initially told investigators that Mr. Caldwell was the aggressor, but later agreed that the video showed Defendant Meek to be the aggressor.

63. Defendant Meek initially told investigators that he had suffered injuries such as a cut and bruising, but the investigation did not find any evidence of injury, either in documentary evidence or witness testimony.

64. Mr. Caldwell has requested documents from Excalibur and the Louisiana State Police, including video, but his requests have been denied.

***Ongoing Harassment***

65. Mr. Caldwell has also been harassed by Louisiana State Police troopers since he filed a lawsuit[1] in state court about this incident.

66. Prior to filing that lawsuit, Mr. Caldwell had never been pulled over by the state police. Since then, he has been pulled over at least four times.

67. In one incident in July 2025 or thereabouts, the state police jailed Mr. Caldwell for possession of drugs. But he had a prescription for the drugs which was provided to the officer before the arrest. All charges were dropped.

68. In another incident, Mr. Caldwell was test-driving a used car with the permission of a dealership. When he was less than one block away, he was pulled over by state police.

69. State police pulled Mr. Caldwell over in September 2026, purportedly for a seatbelt violation. Mr. Caldwell was properly wearing his seatbelt and the citation was eventually dropped.

[1] Mr. Caldwell's state court lawsuit will be voluntarily dismissed.

70. State police have also pulled over Mr. Caldwell's fiancée several times, which has never previously happened to her.

71. State police also pulled over a Caldwell Painting work vehicle driven by one of Mr. Caldwell's employees who happens to have a similar build and features. The state trooper asked for Mr. Caldwell by name when he approached the vehicle and issued warnings to three of the four employees for purported license violations.

72. This ongoing harassment has caused Mr. Caldwell significant stress and fear for his and his family's personal safety.

## CLAIMS FOR RELIEF

### *Count One* – 42 U.S.C. § 1983, Violations of the Fourth Amendment

*Against all Defendants*

73. Plaintiff realleges and incorporates each and every foregoing paragraph.

74. Section 1983 "provides for the recovery of damages when individuals are deprived of their constitutional rights by a person acting under color of state law."[2]

75. Public officials are entitled to immunity from civil damages for their discretionary acts if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[3]

76. It is well-established in the 5th Circuit and elsewhere that "where a plaintiff is … not resisting arrest, and is subsequently beaten, maced, Tased, etc. by police officers, such use of force is plainly excessive and not objectively reasonable."[4]

---

[2] *O'Neal v. Cazes*, 257 Fed.Appx. 710, 713 (Oct. 1, 2007), 2007 WL 2875998.
[3] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
[4] *Davis v. E. Baton Rouge Par. Sheriff's Office*, No. 08-C-708, 2010 U.S. Dist. LEXIS 126722, at *10 (M.D. La. Nov. 30, 2010); see also *Hammond v. Burns*, No. 18-00803-BAJ-RLB, 2020 U.S. Dist. LEXIS 50821, at *10 (M.D. La.

77. Similarly, the Fifth Circuit has held that "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." [5]

**_Count Two – Monell_ Liability**

*Against Defendant Louisiana Department of Public Safety and Corrections*

78. Plaintiff realleges and incorporates each and every foregoing paragraph.

79. Liability under § 1983 for failure to train or supervise is shown when: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[6]

80. The misconduct described herein was caused by the policies, practices, and customs of Defendant Louisiana Department of Public Safety and Corrections because Defendant Meek was hired and trained as a Louisiana State Police Trooper and repeatedly invoked his status as a law enforcement officer throughout the encounter.

---

Mar. 24, 2020) (citing *Golden v. Austin Cty. Sheriff's Dep't*, No. CIV A. H-09-817, 2010 U.S. Dist. LEXIS 105017, 2010 WL 3909476, at *6 (S.D. Tex. Sept. 30, 2010)); *Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir.2006) (use of mace on prostrate, restrained arrestee who posed little or no threat to safety of officers or others was not objectively reasonable); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir 2000)("the use of such weapons (e.g., pepper sprays; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive forc"); *Vinyard v. Wilson*, 311 F.3d 1340, 1348-1349 (11th Cir.2002) (holding that the officer used excessive force by discharging pepper spray into the eyes of an arrestee who was handcuffed, secured in the back of the patrol car, and posed no threat to the officer).

[5] *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017), *citing Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (determining the plaintiff's initial refusals to follow a police officer's instructions amounted to, "at most, passive resistance" and did not justify the officers use of a "`half spear' takedown" against the plaintiff); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (the plaintiff's refusal to get out of her car before her husband arrived on the scene constituted passive resistance).

[6] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).

81. Upon information and belief, Louisiana State Police policies, practices, and customs establish that state troopers must adhere to policy and conduct themselves appropriately, even when off-duty.

82. The full extent of Louisiana State Police policies, practices, and customs are implicated when a state trooper invokes their law enforcement authority under color of law.

83. Defendant Louisiana Department of Public Safety and Corrections failed to properly train and supervise Defendant Meek regarding the policy violations described in the LSP investigation, as well as other deficiencies which caused Mr. Caldwell's injuries.

84. Upon information and belief, Louisiana Department of Public Safety and Corrections should never have hired Defendant Meek given his background.

85. Defendant Louisiana Department of Public Safety and Corrections continues to fail in supervising its officers as they harass and intimidate Mr. Caldwell.

**_Count Three_ – First Amendment Retaliation**

*Against All Defendants*

86. Plaintiff realleges and incorporates each and every foregoing paragraph.

87. The First Amendment prohibits adverse and retaliatory government action against citizens for engaging in protected speech activities.[7]

88. To establish a First Amendment retaliation claim, plaintiffs must allege that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

[7] *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).

activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[8]

89. "Filing a lawsuit against a local government is a First Amendment-protected activity."[9]

90. Here, Defendants retaliated against Mr. Caldwell after he initially filed a lawsuit in state court regarding Defendant Meek by repeatedly pulling him, his family members, and employees over for bogus traffic violations. Mr. Caldwell had never been pulled over by state police prior to filing that suit.

91. As a result of Defendants' harassment, Mr. Caldwell now fears the possibility of asserting his First Amendment rights against law enforcement, whether it be further litigation beyond this incident which has already been initiated or filing future complaints to a law enforcement agency.

### ***Count Four* – Violations of the Louisiana Constitution**

*Against All Defendants*

92. Plaintiff realleges and incorporates each and every foregoing paragraph.

93. Defendants' actions as described herein interfered with state constitutional rights, including the right to be free from excessive force.

### ***Count Five* – Assault and Battery**

*Against Defendant Matthew Meek*

94. Plaintiff realleges and incorporates each and every foregoing paragraph.

---

[8] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
[9] See *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979).

95. Battery is defined in Louisiana as "the intentional use of force or violence upon the person of another."[10]

96. Simple battery is defined in Louisiana law as "a battery committed without the consent of the victim."[11]

97. Second degree battery occurs when an individual "intentionally inflicts serious bodily injury."[12] Louisiana law defines "serious bodily injury" as "bodily injury which involves unconsciousness; extreme physical pain; protracted and obvious disfigurement; protracted loss or impairment of the function of a bodily member, organ, or mental faculty; or a substantial risk of death."[13]

98. Assault is defined in Louisiana law as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[14]

99. Here, Defendant Meek committed assault and battery when he grabbed Mr. Caldwell by the throat, lifted him off the ground, pushed him through double-doors, threw him to the ground, sat on top of him, and repeatedly hit Mr. Caldwell with a closed fist.

100. Defendant Meek was the aggressor and Mr. Caldwell took no action which prompted such a response.

101. Mr. Caldwell fell unconscious for an unknown period of time as a result of Defendant Meek punching him repeatedly in the face. By his actions and based on the accounts of

[10] La. R.S. § 14:33.
[11] La. R.S. § 14:35.
[12] La. R.D. § 14:34.1.
[13] La. R.S. § 14:2(C).
[14] La. R.S. § 14:36.

third-party witnesses, Defendant Meek intended and succeeded in inflicting serious bodily injury on Mr. Caldwell, causing this offence to rise to second degree battery.

**_Count Six_ – State Torts of Negligence and Negligent Infliction of Emotional Distress**

*Against Defendant Matthew Meek*

102. Plaintiff realleges and incorporates each and every foregoing paragraph.

103. In addition to constitutional protections, excessive force claims fall under the ambit of the general negligence provision of Louisiana Civil Code article 2315, and the standard duty/risk analysis applies to determine whether the police officer involved was negligent.[15]

104. Under duty-risk analysis for determining liability, a plaintiff must prove (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached.[16]

105. Defendant Meek was acting under the color of law and owed Mr. Caldwell a duty of care as a member of the public.

106. Defendant Meek breached that duty when he assaulted and battered Mr. Caldwell, causing both physical and emotional damage.

**_Count Seven_ – Vicarious Liability**

*Against Defendant Louisiana Department of Public Safety and Corrections*

107. Plaintiff realleges and incorporates each and every foregoing paragraph.

---

[15] *Jenkins v. Fanguy*, 946 So.2d 201, 292 (La.App. 4 Cir. 11/15/06).
[16] *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

108. Defendant Meek repeatedly identified himself to Mr. Caldwell and bystanders as a law enforcement officer and was, therefore, acting under the scope of his employment with Louisiana State Police when he assaulted and battered Mr. Caldwell.

109. Therefore, Defendant Louisiana Department of Public Safety and Corrections is vicariously liable for all causes of action pled against Defendant Meek pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

### ***Count Eight*** **– Indemnity**

*Against Defendant Louisiana Department of Public Safety and Corrections*

110. Plaintiff realleges and incorporates each and every foregoing paragraph.

111. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities

112. The Louisiana Department of Public Safety and Corrections oversees the Louisiana State Police.

113. The Louisiana State Police employed, supervised, and controlled Defendant Meek and was responsible for his hiring, training, and discipline.

114. Defendant Meek was operating under the color of law while committing all allegations herein as he repeatedly invoked his law enforcement authority to Mr. Caldwell and bystanders.

115. The Louisiana Department of Public Safety and Corrections is therefore obligated by Louisiana statute to pay any judgment entered against Defendant Meek.

## RELIEF REQUESTED

116. Wherefore Plaintiff requests judgment to be entered against Defendants and that the Court grant the following:

a. Declaratory relief;

b. Judgment against Defendants for Plaintiff's asserted causes of action;

c. Award of compensatory damages;

d. Award of special and punitive damages;

e. Award costs and attorney's fees;

f. Order such other and further relief at law or in equity to which Plaintiff may be justly entitled.

Respectfully submitted,

Louis Caldwell, by and through his counsel,

*/s/ Dave Lanser*

William Most, La. Bar No. 36914
David Lanser, La. Bar No. 37764
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Telephone: (504) 533-4521
Fax: (504) 414-6400
williammost@gmail.com
lanser@mostandassociates.com